ESTATE OF CALLAHAN : CALLAHAN and another, Appellants, vs. LA CROSSE TRUST COMPANY, Respondent. [Case No. 18.] *

LA CROSSE TRUST COMPANY, Appellant, vs. CALLAHAN and another, Respondents. [Case No. 28.]

CALLAHAN, Appellant, vs. LA CROSSE TRUST COMPANY, Respondent. [Case No. 40.] *

*September 9—October 14, 1947.*

* Motion for rehearing denied, with $25 costs, on December 23, 1947.

248

251

Case No. 18:

For the appellant Albert R. Callahan there were briefs by *Otto M. Schlabach,* and oral argument by *Mr. Schlabach* and *Mr. Herman M. Knoeller,* both of La Crosse.

For the appellant John L. Callahan, Jr., there was a brief by *Lees & Bunge,* and oral argument by *Otto O. Marquardt,* all of La Crosse.

For the respondent there was a brief by *Crosby, Schneider & Esch,* and oral argument by *Fred W. Crosby,* all of La Crosse.

*C. L. Baldwin* of La Crosse, guardian *ad litem* for Carolyn Sue Callahan.

Case No. 28:

For the appellant there was a brief by *Crosby, Schneider & Esch,* and oral argument by *Fred W. Crosby,* all of La Crosse.

For the respondent Albert R. Callahan there was a brief by *Otto M. Schlabach* of La Crosse, attorney, and *Wilkie, Toe-*

*baas, Hart & Jackman* of Madison of counsel, and oral argument by *Mr. Schlabach* and *Mr. Harold M. Wilkie.*

For the respondent John L. Callahan, Jr., there was a brief by *Lees & Bunge,* and oral argument by *Otto O. Marquardt,* all of La Crosse.

*C. L. Baldwin* of La Crosse, guardian *ad litem* for Carolyn Sue Callahan.

Case No. 40: ·

For the appellant there was a brief by *Lees & Bunge,* and oral argument by *Otto Q. Marquardt,* all of La Crosse.

*C. L. Baldwin* of La Crosse, guardian *ad litem* for Carolyn Sue Callahan.

RECTOR, J.   The appeal of the Trust Company from the order extending the time for filing the bill of exceptions is without merit.   We need not consider whether the trial court properly extended the time upon the ground that good cause was shown as required by sec. 269.45, Stats.   The service of notice of entry of judgment upon Mr. Schlabach, as attorney for the objectors, was made by mailing him the original and a copy of the notice with a request that he admit service.   Some days later he admitted "due service" of the paper.   Sec. 269.34 (4) provides for service by mail "where the person making the service and the person on whom it is made reside in different places between which there is a communication by mail." Such was true in this case.   There is no requirement that such places of residence be in different municipal subdivisions. Mr. Schlabach did not admit personal service.   The case in this respect differs from *Banking Comm. v. Flanagan* (1940), 233 Wis. 405, 289 N. W. 647, where there was such an admission of a service by mail.   There is no inference of personal

service arising out of the admission of "due service," and Mr. Schlabach is not precluded from establishing the type of service admitted by him.   The service was in fact made by mail and under such circumstances the time for serving the proposed bill of exceptions was extended from ninety days to one hundred eighty days under the provisions of sec. 269.36.   The bill was proposed and settled within the one-hundred-eighty-day period.

The appeal of Albert and John from the judgment admitting the 1944 will to probate raises the question whether the trial court properly applied the doctrine of "dependent relative revocation."

That rule is ordinarily applied in cases where a testator, having executed one will, thereafter revokes it by the execution of a later will which for some reason fails to become effectual.   In such cases revocation of the earlier instrument "is treated as relative and dependent upon the efficacy of the later disposition, which was intended to be substituted."   *Will of Lundquist* (1933), 211 Wis. 541, 543, 248 N. W. 410.   The revocation of the earlier document is held to be dependent upon the validity of the later one and, the later one being invalid, the earlier one stands.   See also *Will of Marvin* (1920), 172 Wis. 457, 179 N. W. 508; *Estate of Rauchfuss* (1939), 232 Wis. 266, 287 N. W. 173.   The rule has been criticized by some courts and some text writers, but it is the law in this jurisdiction.

The situation presented here differs somewhat from the usual case in which the doctrine is applied.   Here we have a revocation of a later will with an announced intention of reinstating a former one.   But the rule was applied to such a situation in *Powell v. Powell* (1866), L. R. 1 Prob. 209.   The reasoning upon which it is based applies to the same extent that it does in the typical case.   Adherence to the rule requires that we apply it here.

It is argued that there is a distinction between this case and other cases in which the rule has been applied. It is said that here the testatrix was advised the destruction of the 1944 will did not reinstate the 1940 will, that she had an adequate opportunity thereafter to prepare a new will if she had desired to do so, and that her failure to prepare a will indicated that her destruction of the 1944 will was not conditioned but was accompanied by an intention to revoke the document absolutely. There is considerable force in the argument. The doctrine of dependent relative revocation is based upon the testator's inferred intention. It is held that as a matter of law the destruction of the later document is intended to be conditional where it is accompanied by the expressed intent of reinstating a former will and where there is no explanatory evidence. Of course if there is evidence that the testator intended the destruction to be absolute, there is no room for the application of the doctrine of dependent revocation. Failure to prepare a new will may or may not be significant. The inferences to be derived from such a failure will vary according to the circumstances. If it were due to lack of opportunity, it would be difficult to attribute any great significance to it. The inferences, as in other factual questions, are to be drawn by the trier of fact.

Here the trial court evidently did not consider the delay in preparing a new will sufficient to establish that the 1944 will was destroyed with the intent to revoke it absolutely. It was justified in arriving at that conclusion.

Three days after Mr. Hale's advice to Mrs. Callahan, her husband died and she was stricken sixteen days after his death with an illness which rendered her incompetent thereafter. Both she and her husband were advanced in years. She was eighty-seven and he was eighty-four. They had lived together for many years. Her grief at his death, the necessity for arrangements that were then required, and the loss that she must have felt, constitute adequate explanation of her failure to dis-

cuss the matter of a new will in the short time before she became ill.

There is a further argument to the effect that Mr. Hale's testimony as to the testatrix's intention in destroying her 1944 will is incompetent and of no probative force.

The testimony is claimed to be incompetent under the pro-visions of sec. 325.22, Stats., which reads:

"An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment. This prohibition may be waived by the client, and does not include communications which the attorney needs to divulge for his own protection, or the protection of those with whom he deals, or which were made to him for the express purpose of being communicated to another, or being made public."

Although it was received without objection, it is nevertheless incompetent if it relates to a communication embraced within the statute. *Beilfuss v. Dinnauer* (1921), 174 Wis. 507, 183 N. W. 700. In our opinion the communication was not within the statute. It consisted of Dr. Callahan's statement to Mr. Hale on the occasion of a social visit. It was not made in the course of Mr. Hale's professional employment for the purpose of requesting his professional advice.

So far as the matter of probative force is concerned, it strikes us that the circumstances are persuasive as to the testatrix's intention. We must bear in mind that prior to the doctor's statement to Mr. Hale he and his wife had each executed five wills and these wills carried the clearest indication that they were the result of collaboration and execution of a common design. The fact that they acted in concert in preparing these wills carries an inference that they collaborated in destroying their 1944 wills. Dr. Callahan's statement to Mr. Hale in the presence of Mrs. Callahan that they had acted together must be considered as the statement of one who without doubt had consulted with her in the matter.

The appeal of John Callahan from the order refusing to reopen proceedings to permit proof of the January 29th will, is also without merit. An order denying probate of that will was entered July 24, 1945. Thereafter the matter was permitted to lie dormant until after the court had admitted the 1944 will to probate and an appeal had been taken from its decision. The application to reopen proceedings was made in February of 1947, more than one and one-half years after the January 29th will had been denied probate. There was no appeal from the order of denial; it could not have been set aside under the provisions of sec. 269.46, Stats.; and there is no equitable ground, such as fraud upon the court, which would justify setting it aside. It would have been useless to reopen the proceedings, and the court properly refused to do so.

*By the Court.*—No. 18, Judgment affirmed. No. 28, Order affirmed. No. 40, Order affirmed.